# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

John Clarence Bennett, Jr.,      :      Case No. 05:13 CV 52

     Petitioner,      :

       :

vs.      :

       :

Jason Bunting, Warden,      :      **MAGISTRATE'S REPORT AND**

     Respondent.      :      **RECOMMENDATION**

### I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, filed January 9, 2013 (Docket No. 1), Respondent's Return and Motion to Dismiss, filed April 10, 2013 (Docket No. 8), and Petitioner's Traverse, filed May 9, 2013 (Docket No. 13). Given the filing date of the petition, the provisions of the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) apply. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

For the reasons set forth below, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus.

## II. PROCEDURAL BACKGROUND

**A.    INDICTMENT**

Petitioner John Clarence Bennett, Jr. ("Petitioner") was indicted by a Stark County, Ohio,

Grand Jury on April 21, 2009, on the following four counts:

> COUNT 1        Aggravated robbery, a violation of OHIO REV. CODE § 2911.01(A)(3).
>
> COUNT 2        Aggravated burglary, a violation of OHIO REV. CODE § 2911.11(A)(1).
>
> COUNT 3        Kidnapping, a violation of OHIO REV. CODE § 2905.01(A)(2).
>
> COUNT 4        Felonious assault, a violation of OHIO REV. CODE § 2903.11(A)(2).

(Docket No. 8, Attachment 1, pp. 5-7 of 285). Petitioner entered a plea of not guilty to all

charges (Docket No. 8, Attachment 1, pp. 8-11 of 285).

On June 8, 2009, Petitioner withdrew his not guilty pleas and entered pleas of guilty to all

charges (Docket No. 8, Attachment 1, pp. 8-9, 17-21 of 285). Petitioner was subsequently

sentenced to four seven-year terms of incarceration for each count, to run concurrently (Docket

No. 8, Attachment 1, pp. 10-11, 12-16 of 285). Petitioner was also informed of his right to seek

judicial release after five years (Docket No. 8, Attachment 3, p. 14 of 18). The trial court advised

Petitioner that there was a "possible length" of five years of post release control (Docket No. 8,

Attachment 3, p. 15 of 18).

**B.    THE DIRECT APPEAL**

Petitioner failed to file a timely direct appeal (Docket No. 8, Attachment 1, pp. 1-285 of

285). Instead, on December 8, 2009, Petitioner filed, *pro se*, a Notice of Appeal as well as a

Motion for Delayed Appeal in the Fifth Judicial District Court of Appeals for Stark County,

Ohio (Docket No. 8, Attachment 1, pp. 22-29 of 285). On December 11, 2009, Petitioner

presented six assignments of error/issues to the Court of Appeals:

2

1.      Withdrawal of guilty plea based upon defective advice of trial counsel (ineffective assistance of counsel).

2.      Insufficiency of evidence with respect to aggravated burglary and felonious assault.

3.      Allied offenses with respect to kidnapping and aggravated robbery.

4.      Manifest weight of evidence with respect to kidnapping charge which should have been unlawful restraint.

5.      Ineffective assistance of counsel for failure to move the Court for a change of venue when the trial judge was a former prosecutor in Petitioner's wife's prior criminal case.

6.      Abuse of discretion by the trial court for failure to recuse himself for conflict of interest.

(Docket No. 8, Attachment 1, pp. 24-29 of 285).

On December 14, 2009, the State filed its Answer Brief in opposition to Petitioner's

Motion for Delayed Appeal as well as a Motion to Dismiss (Docket No. 8, Attachment 1, pp. 30-

36 of 285). The Appellate Court denied Petitioner's Motion on December 23, 2009, citing

Petitioner's failure to establish good cause (Docket No. 8, Attachment 1, pp. 46-47 of 285). On

March 12, 2010, Petitioner filed, *pro se*, a Notice of Appeal and Motion for Leave to File a

Delayed Appeal with the Ohio Supreme Court (Docket No. 8, Attachment 1, pp. 48-51 of 285).

Petitioner claimed his delay was due to his mistaken belief that his counsel would file the appeal

(Docket No. 8, Attachment 1, p. 51 of 285). The Ohio Supreme Court denied leave to appeal on

May 5, 2010, and dismissed the case (Docket No. 8, Attachment 1, p. 58 of 285).

## C.      MOTION TO WITHDRAW GUILTY PLEA

While his appeal was pending with the Ohio Supreme Court, Petitioner filed, *pro se*, a

Motion to Withdraw his guilty plea on April 5, 2010, in the Common Pleas Court of Stark

County, Ohio (Docket No. 8, Attachment 1, pp. 59-62 of 285). Petitioner claimed that, at the

time of his plea, he was informed only that he was subject to a term of post release control "up to" a certain amount of time (Docket No. 8, Attachment 1, p. 60 of 285). Upon further research, Petitioner discovered that, based on his crimes, he was subject to a *mandatory* five-year term of post release control (Docket No. 8, Attachment 1, p. 60 of 285). Petitioner alleged that, had he known of this mandatory term, he would not have pled guilty (Docket No. 8, Attachment 1, p. 61 of 285).

On June 14, 2010, the trial court held a hearing on Petitioner's Motion to Withdraw, which it ultimately denied (Docket No. 8, Attachment 1, pp. 63-69 of 285; Docket No. 8, Attachment 2). The court, in a nunc pro tunc order, re-sentenced Petitioner to four seven-year terms of incarceration, to be served concurrently, and a *mandatory* five-year term of post release control (Docket No. 8, Attachment 1, pp. 63-69 of 285).

**D.    DIRECT APPEAL FROM RE-SENTENCING**

On July 27, 2010, Petitioner, through counsel, filed a timely appeal from the re-sentencing order (Docket No. 8, Attachment 1, p. 70 of 285). On November 29, 2010, Petitioner presented one assignment of error/issue to the Court of Appeals: the trial court erred by denying Petitioner's Motion to Withdraw his guilty plea (Docket No. 8, Attachment 1, pp. 71-141 of 285). Petitioner claimed that, because he was not informed of the mandatory length of his post release control, he had not, in fact, been officially sentenced on June 15, 2009 (Docket No. 8, Attachment 1, p. 83 of 285). Therefore, Petitioner should have been allowed to withdraw his guilty plea (Docket No. 8, Attachment 1, p. 83 of 285).

On May 9, 2011, the Appellate Court affirmed the decision of the trial court, finding Petitioner's original conviction and sentence valid, except for the portion concerning post release control, which was corrected at the re-sentencing hearing (Docket No. 8, Attachment 1, p. 162 of

4

285). Therefore, in order to withdraw his guilty plea, Petitioner had to show a "manifest injustice" as a result of his original sentence (Docket No. 8, Attachment 1, p. 162 of 285). Petitioner failed to do so, and as a result, the decision to deny his Motion to Withdraw was affirmed (Docket No. 8, Attachment 1, p. 162 of 285).

Petitioner filed, *pro se*, a timely appeal to the Ohio Supreme Court on June 17, 2011 (Docket No. 8, Attachment 1, pp. 164-65 of 285). On that same date, Petitioner presented the following assignment of error/issue: the trial court erred by denying Petitioner's Motion to Withdraw his former plea of guilty (Docket No. 8, Attachment 1, pp. 166-79 of 285). On June 22, 2011, the State waived its response (Docket No. 8, Attachment 1, p. 180 of 285). On October 5, 2011, the Ohio Supreme Court declined jurisdiction and dismissed Petitioner's appeal for not involving any substantial constitutional question (Docket No. 8, Attachment 1, p. 181 of 285).

**E.**     **APPLICATION TO RE-OPEN APPEAL**

On July 15, 2011, Petitioner timely filed an Application to Re-Open his direct re-sentencing appeal pursuant to App.R. 26(B) (Docket No. 8, Attachment 1, pp. 182-98 of 285). In his application, Petitioner claimed his appellate counsel was ineffective for failing to present the following alleged errors on appeal:

1. The trial court erroneously accepted Petitioner's guilty plea without first determining that he understood the nature of the charges against him which precluded a knowing, voluntary, and intelligent plea of guilty.

2. The trial court erred by not placing the negotiated plea on the record in open court.

3. The trial court abused its discretion when it entered judgment without determining that there was a factual basis for the plea of guilty.

4. The trial court failed to explain to Petitioner his right to compulsory process and his right to "force" witnesses to appear at trial in his defense.

5

5.      The trial court erred in denying Petitioner's motion to withdraw his guilty plea without a full and fair hearing.

6.      The trial court abused its discretion when it sentenced Petitioner to allied offenses.

7.      Petitioner's plea was not a voluntary and knowing plea, in violation of Petitioner's due process rights.

(Docket No. 8, Attachment 1, pp. 182-98 of 285). The State opposed Petitioner's application

(Docket No. 8, Attachment 1, pp. 199-209 of 285).

The Appellate Court made the following findings in its opinion:

1.      Petitioner made a knowing, voluntary, and intelligent plea in accordance with Crim.R. 11.

2.      Petitioner could not demonstrate prejudice with regard to the trial court's failure to place the negotiated plea on the record, given Petitioner's seven-year sentence, when the possible sentence was forty years.

3.      Petitioner received a full and fair hearing with regard to his Motion to Withdraw.

4.      Petitioner failed to cite which offenses he considered to be "allied offenses of similar import."

(Docket No. 8, Attachment 1, pp. 224-32 of 285). Therefore, Petitioner's Motion to Re-Open

was denied (Docket No. 8, Attachment 1, p. 232 of 285).

On November 15, 2011, Petitioner timely filed, *pro se*, a Notice of Appeal to the Ohio

Supreme Court (Docket No. 8, Attachment 1, pp. 233-34 of 285). On that same date, Petitioner

presented seven assignments of error/issues, summarized as follows:

1.      The trial court erroneously accepted Petitioner's guilty plea without first determining that he understood the nature of the charges against him.

2.      The trial court erred in not making the plea agreement a part of the record.

3.      The trial court abused its discretion when it entered judgment without determining that there was a factual basis for the plea of guilty.

4.      The trial court failed to explain to Petitioner his right to compulsory process and his right to compel witnesses to appear in his defense.

5.      The trial court denied Petitioner's Motion to Withdraw his plea without a full and fair hearing.

6.      The trial court abused its discretion when it sentenced Petitioner to allied offenses.

7.      Petitioner was not properly informed about the defenses to the charges.

(Docket No. 8, Attachment 1, pp. 235-52 of 285). The State waived its response (Docket No. 8, Attachment 1, p. 265 of 285). On January 18, 2012, the Ohio Supreme Court dismissed the appeal for not involving any substantial constitutional question (Docket No. 8, Attachment 1, p. 266 of 285).

## F.      MOTION TO CORRECT SENTENCE

On August 9, 2012, Petitioner filed, *pro se*, a Motion to Correct his sentence, alleging the trial court failed to follow sentencing statutes (Docket No. 8, Attachment 1, pp. 267-72 of 285). In its opposition, the State claimed Petitioner provided no support for his claim, and filed neither a direct appeal or motion for post-conviction relief on the matter (Docket No. 8, Attachment 1, pp. 278-81 of 285). Furthermore, the State argued, Petitioner's claim was *res judicata*, given Petitioner's failure to file a direct appeal as to the issue (Docket No. 8, Attachment 1, pp. 282-83 of 285).

On August 14, 2012, the trial court denied Petitioner's Motion (Docket No. 8, Attachment 1, p. 285 of 285). Petitioner did not appeal.

## G.      PETITION FOR WRIT OF HABEAS CORPUS

Petitioner filed a Petition under 28 U.S.C. § 2254(d) for Writ of Habeas Corpus on January 9, 2013, which is now before this Court, alleging the following assignments of

7

error/issues:

1.      The trial court erroneously accepted Petitioner's plea of guilty without first determining that Petitioner had an understanding of the nature of the charges against him, which precluded Petitioner from making a knowing, voluntary, and intelligent plea, in violation of the Fifth, Sixth, and Fourteenth Amendments.

2.      The trial court failed to place the negotiated plea on the record in open court, a violation of the Fourteenth Amendment.

3.      Petitioner's plea was not made knowingly and voluntarily in violation of the Fifth and Fourteenth Amendments and Article I, Section 10 of the Ohio Constitution.

4.      The trial court erred in denying Petitioner's Motion to Withdraw his guilty plea without a full and fair hearing, in violation of the Fourth Amendment.

5.      The trial court abused its discretion when sentencing Petitioner to crimes that were to be considered "allied offenses of similar import," a violation of the Fifth and Fourteenth Amendments.

6.      Petitioner's plea was not made knowingly, voluntarily, or intelligently given the inadequate record made by the trial court.

7.      Petitioner's appellate counsel provided ineffective assistance by not raising allegedly relevant issues on appeal.

(Docket No. 1; Docket No. 1, Attachment 2). The State opposes the Petition and requests that this Court deny the Writ (Docket No. 8).

### IV. TIMELINESS ANALYSIS

#### A. TIMELINESS

##### 1. STANDARD

Under the AEDPA, persons in custody have one year during which to file a petition for habeas corpus. 28 U.S.C. § 2244(d)(1). This limitation period runs from the latest of:

(A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

8

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The statute further states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgement or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The United States Supreme Court has held that "direct review" generally includes the ninety-day period a defendant has to seek certiorari from the Supreme Court. *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989). The same, however, is *not* true for post-conviction actions. In its 2007 decision *Lawrence v. Florida* (549 U.S. 327 (2007)), the Supreme Court held that a state action remains pending under 28 U.S.C. § 2244(d)(2) only so long as it is awaiting review or appeal in the *state* courts. 549 U.S. at 334.

**2. APPLICATION**

Petitioner was originally sentenced on June 8, 2009 (Docket No. 8, Attachment 1, pp. 10-11 of 285). He did not timely file a direct appeal, and his Motion for Delayed Appeal was denied (Docket No. 8, Attachment 1, pp. 46-47 of 285). The United States Supreme Court has held

where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A). In such a case, 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such

> review' must reflect the conclusion of the out-of-time direct appeal, or the
> expiration of the time for seeking review of that appeal.

*Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009). The Court makes no mention of this right

being afforded to defendants whose applications for an out-of-time appeal are *denied*. *Id*.

Therefore, the one-year statute of limitations began tolling for Petitioner on June 16, 2009, the

day after entry of his conviction and sentence.

　　During this one-year period, Petitioner was also entitled to statutory tolling under 28

U.S.C. § 2244(d)(2) for any properly filed applications for state post-conviction relief or

collateral review. 28 U.S.C. § 2244(d)(2); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 417

(2005). This "tolling provision does not . . . 'revive' the limitations period (i.e., restart the clock

at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346

F.3d 598, 602 (6th Cir. 2003).

　　Here, Petitioner properly filed a Motion to Withdraw[1] his guilty plea, effectively stopping

the clock, on April 5, 2010 (Docket No. 8, Attachment 1, pp. 59-62 of 285). This Motion was

denied by the trial court on June 14, 2010 (Docket No. 8, Attachment 1, p. 63 of 285). Petitioner

timely filed Notices of Appeal to both the Appellate and Ohio Supreme Courts, which were not

complete until October 5, 2011 (Docket No. 8, Attachment 1, pp. 70, 164-65 of 285). Petitioner's

year was tolled even further by the timely filing of his Rule 26(B) Motion to Re-Open, made on

July 15, 2011 (Docket No. 8, Attachment 1, pp. 182-98 of 285). This Motion was denied on

October 3, 2011 (Docket No. 8, Attachment 1, pp. 221-32 of 285) and  Petitioner filed timely

appeals to the Appellate and Ohio Supreme Courts (Docket No. 8, Attachment 1, pp. 233-34 of

------

　　[1] Under Crim.R. 32.1, a motion to withdraw a guilty plea can only be made before a sentence is
imposed; *however*, the court may permit a defendant to withdraw his guilty plea after this time to "correct
manifest injustice."

285). The Ohio Supreme Court dismissed this appeal on January 18, 2012 (Docket No. 8, Attachment 1, p. 266 of 285). Therefore, Petitioner's "one-year" was actually tolled from April 5, 2010, through January 18, 2012.[2]

On April 5, 2010, Petitioner was 264 days into his statute of limitations period. When the statute began to run again on January 19, 2012, Petitioner had 101 days remaining to file his writ of habeas corpus, making his deadline April 30, 2012.[3] Petitioner did not file his writ of habeas corpus until January 9, 2013 (Docket No. 1). Petitioner's application is untimely by more than eight months and is therefore subject to dismissal.

In his Reply, Petitioner contends his petition should be deemed timely given either: (1) a delayed starting of the limitations period; or (2) equitable tolling (Docket No. 13). Petitioner's argument is without merit.

### a.      DELAYED COMMENCEMENT

Under 28 U.S.C. § 2244(d), the one-year statute of limitations begins to run from the latest of four possible dates, *see discussion, supra*, with options (B), (C), and (D) being considered the "delayed commencement" provisions of the statute. *See Johnson v. Birkett*, 2011 U.S. Dist. LEXIS 117975, *11 (E.D. Mich. Sept. 8, 2011). In applying these delayed commencement provisions, "a court must apply a claim-by-claim approach." *Id. See also Ege v. Yukins*, 485 F.3d 364, 373 (6th Cir. 2007) (explaining, in applying § 2244(d)(1)(D), that "[w]e must analyze Ege's two habeas claims separately with regard to . . . the section 2244(d)(1)

---

[2] Because a Rule 26(B) motion is considered a post-conviction motion, it is not entitled to the additional ninety days afforded a defendant during direct appeals to file a writ with the United States Supreme Court. *See Lawrence*, 549 U.S. at 334.

[3] Technically, the 101st day falls on Saturday, April 28, 2012.

11

bar."). Here, Petitioner argues his one-year period should not have begun until the judgment

regarding his *re-sentencing* became final on January 18, 2012 (Docket No. 13, p. 3 of 18).

Petitioner is incorrect.

Petitioner alleges, *inter alia*: (1) the trial court failed to ensure Petitioner understood the

charges against him before taking his guilty plea; (2) the trial court failed to place the negotiated

plea deal on the record; (3) the factual basis for Petitioner's plea was not established; (4) the trial

court failed to provide Petitioner a full and fair hearing with regard to his Motion to Withdraw;

and (5) the trial court failed to compile a complete record (Docket No. 1).

Although certainly germane to Petitioner's re-sentencing, these claims *stem* from Petitioner's

original sentence. In other words, Petitioner could have sought relief for these same issues

immediately after his June 15, 2009, sentencing. Petitioner chose not to seek timely direct review

of these issues. He cannot now seek relief in federal court. Therefore, the statute of limitations

for Petitioner's habeas claims one, two, three, four, and six is not available for delayed

commencement.

### b.    EQUITABLE TOLLING

Alternatively, Petitioner argues his claims are entitled to equitable tolling from the date

of his original conviction and sentencing. Petitioner is incorrect.

The one-year limitations provision set forth in § 2244(d) "is subject to equitable toling in

appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). To be entitled to such

tolling, a petitioner "must show '(1) that he had been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence*, 549

U.S. 327 at 336 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The petitioner bears

the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329

F.3d 490, 494 (6th Cir. 2003).

While Petitioner has filed numerous motions on his behalf since his June 2009 sentencing, not all of those motions have been timely, costing Petitioner potentially valuable appellate relief. For example, Petitioner failed to file a timely direct appeal immediately following his original sentencing (Docket No. 8, Attachment 1, p. 24 of 285). Given the totality of Petitioner's record, it cannot be said Petitioner was diligently pursuing his rights.

However, even if Petitioner *had* satisfactorily proven the diligence prong, his alleged extraordinary circumstances are not sufficient. Petitioner alleges that, while he attempted to file his petition in a timely manner, numerous obstacles stood in his way, including: (1) having to learn a new legal research system; (2) hostile interactions with the prison librarian; and (3) closure of and limited access to the prison law library (Docket No. 13). This Circuit has repeatedly held that claims regarding inadequate access to the prison library are insufficient to warrant equitable tolling. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011) (noting a petitioner's pro se status and limited law library access did not affect the equitable tolling analysis); *United States v. Stone*, 68 F.Appx. 563, 565-66 (6th Cir. 2003) (stating "allegations regarding insufficient library access, standing alone, do not warrant equitable tolling"). Therefore, Petitioner's claims of extraordinary circumstances are without merit and the Magistrate recommends the Court conclude Petitioner is not entitled to equitable tolling.

Without either delayed commencement or equitable tolling, Petitioner's claims one, two, three, four, and six are time-barred under the AEDPA one-year statute of limitation. As such, the Magistrate recommends they be dismissed.

13

### 3. GROUNDS FIVE AND SEVEN

With regard to Petitioner's habeas claims five and seven, namely allied offenses of similar import and ineffective assistance of counsel, the result is not quite the same. Petitioner originally raised these issues in his Rule 26(B) motion, timely filed on July 15, 2011 (Docket No. 8, Attachment 1, pp. 182-98 of 285). The factual predicate of this claim was Petitioner's June 14, 2010, re-sentencing. Petitioner's timely appeal kept these claims under direct review until January 18, 2012 (Docket No. 8, Attachment 1, p. 266 of 285). Therefore, the one-year statute of limitations for these claims did not begin to run until January 19, 2012, making them timely filed in Petitioner's January 9, 2013, habeas petition.

### IV. HABEAS ANALYSIS

**A.    PROCEDURAL ISSUES**

**1.    PROCEDURAL DEFAULT STANDARD OF REVIEW**

Claims in federal habeas corpus can only be pursued if certain procedural requirements are met. Federal courts lack jurisdiction to consider a habeas petition claim not fairly presented to the state courts. *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (*citing Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A petitioner "fairly presents a federal habeas claim to the state courts only if he 'asserted both the factual and legal basis for his claim.'" *Hicks v. Straub*, 377 F.3d 538, 552 (2004) (*quoting McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). In making this determination, a habeas court may consider whether:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis question; or (4) the petitioner alleged 'facts well within the mainstream of [the pertinent] constitutional law.'

14

*McMeans*, 228 F.3d at 681.

Not only must a state prisoner fairly present his case to the state courts, he must also *exhaust* his state remedies before bringing his claim in a federal habeas corpus proceeding. 28 U.S.C. § 2254(b), (c). A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If there remains a remedy under state law the petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim. *Drummond v. Houk*, 761 F.Supp.2d 638, 662 (N.D. Ohio 2010).

In *Maupin v. Smith*, the Sixth Circuit outlined that now familiar test to be followed in cases of potential procedural default. 785 F.2d 135 (6th Cir. 1986). First, the federal court must determine whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Id*. at 138. Second, the federal court must determine whether the state courts enforced the state procedural sanction - that is, whether the state courts actually based their decisions on the procedural rule. *Id*. Third, the federal court must consider whether the state rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *Id*. To be independent, "a state procedural rule and the state courts' application of it 'must rely in no part on federal law.'" *Drummond*, 761 F.Supp.2d at 663 (*citing Fautenberry v. Mitchell*, 2001 U.S. Dist. LEXIS 25700 (S. D. Ohio 2001)). To be adequate, "a state procedural rule must be 'firmly established and regularly followed' by the state courts at the time it was applied. *Drummond*, 761 F.Supp.2d at 663 (*quoting Beard v. Kindler*, 130 S.Ct. 612, 617 (2009)).

In determining whether the first three *Maupin* factors are met, the federal court looks to the "last explained state court judgment." *Drummond*, 761 F.Supp.2d at 664 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)). If this court rendered its opinion based on the state procedural bar, default occurs. *Maupin*, 785 F.2d at 138. If this court reached its opinion based on the merits of the claim, default does not occur and the federal habeas court may also consider the merits of the claim. *Id*.

Finally, under *Maupin*, if a claim is procedurally defaulted, a federal court may only consider the merits of the claim if the petitioner demonstrates either: (1) there was cause for him not to follow the procedural rule and he was actually prejudiced by the alleged constitutional error; or (2) a fundamental miscarriage of justice will result from a bar of federal habeas review. *Id*. With regard to the first option, to establish "cause," a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule. *Kirby v. Beightler*, 2010 U.S. Dist. LEXIS 87158, *14 (N.D. Ohio 2010). To establish "prejudice," the petitioner must show the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension. *Id*. There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial. *Id*.

The second option, demonstrating a fundamental miscarriage of justice, is closely tied to the "actual innocence" doctrine. *Gibbs v. United States*, 655 F.3d 473, 477-78 (6th Cir. 2011) (*citing Schlup v. Delo*, 513 U.S. 298, 321 (1995)). According to the United States Supreme Court, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496

16

(1986)). Actual innocence is an extremely narrow exception, and one that is very rarely successful. *Gibbs*, 655 F.3d at 477-78.

To demonstrate a fundamental miscarriage of justice, a petitioner must prove he or she is actually innocent of the crime for which he or she was convicted. *Brinkley v. Houk*, 2012 U.S. Dist. LEXIS 60621 (N.D Ohio 2012). Actual innocence means factual innocence, not mere legal insufficiency. *Id*. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Cleveland v. Bradshaw*, 760 F.Supp.2d 751, 756 (N.D. Ohio 2011) (*quoting Schlup*, 513 U.S. at 327). To prevail, a petitioner must support his allegations with new reliable evidence not presented at trial, whether it be exculpatory evidence, scientific evidence, critical physical evidence, or trustworthy eyewitness accounts. *Bradshaw*, 760 F.Supp.2d at 756.

### 2.    GROUND FIVE IS PROCEDURALLY DEFAULTED

In ground five, Petitioner alleges the trial court erred by failing to sentence him to allied offenses of similar import. The Ohio Supreme Court, in *State v. Johnson*, (128 Ohio St. 3d 153 (2010)), stated the standard for determining whether offenses are "allied offenses of similar import under R.C. 2941.25(A):"

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. . . If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

17

> Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, . . . the offenses will not merge.

128 Ohio St.3d at 162-63 (internal citations omitted).

Here, Petitioner had been hired by the victim to do odd jobs (Docket No. 8, Attachment 1, p. 210 of 285). At some point, Petitioner and his brother went into the victim's home, attacked the victim in his basement, physically beat him, and then duct-taped him to a chair (Docket No. 8, Attachment 1, p. 210 of 285). While holding a screwdriver to the victim's throat, Petitioner forced the victim to write him a check for $3,500 (Docket No. 8, Attachment 1, p. 210 of 285). Before leaving, Petitioner took the victim's wallet, credit cards, and cash (Docket No. 8, Attachment 1, p. 210 of 285).

Petitioner pled guilty to one count each of aggravated robbery, aggravated burglary, kidnapping, and felonious assault (Docket No. 8, Attachment 1, pp. 8-9 of 285). The Ohio Supreme Court has long held that "implicit within every robbery (and aggravated robbery) is a kidnapping." *State v. Jenkins*, 15 Ohio St.3d 164, 198 n.29 (Ohio 1984). "Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus. Thus, when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime." *State v. Fears*, 86 Ohio St.3d 329, 344 (Ohio 1999).

Based on the facts presented, it is clear Petitioner possessed the same animus during the commission of both the aggravated robbery and kidnapping. The entire purpose of duct-taping the victim to a chair was to make the victim compliant in writing Petitioner a check and

remaining immobile while Petitioner stole his wallet, credit cards, and cash. In other words, the kidnapping was "merely incidental to the underlying crime." *See Fears*, 86 Ohio St.3d at 344.

So too is the case with Petitioner's charges of kidnapping and felonious assault. According to the Ohio Supreme Court, "kidnapping and felonious assault . . . are allied offenses of similar import." *State v. Wilson*, 129 Ohio St.3d 214, 216 (Ohio 2011). Therefore, the State had three options under which to charge Petitioner: (1) kidnapping and aggravated burglary; (2) aggravated burglary and felonious assault; and (3) aggravated robbery and aggravated burglary. Instead, the State chose to charge, and ultimately accept a guilty plea from Petitioner on all four charges: aggravated burglary, aggravated robbery, kidnapping, and felonious assault (Docket No. 8, Attachment 1, pp. 10-11 of 285).

On appeal from his re-sentencing, Petitioner raised one substantive issue: did the trial court err when it denied Petitioner's Motion to Withdraw his guilty plea (Docket No. 8, Attachment 1, pp. 71-87 of 285). Petitioner makes no mention of allied offenses of similar import, even though this was the second time Petitioner was sentenced on these same charges (Docket No. 8, Attachment 1, pp. 71-87 of 285).

As stated above, in order to garner federal habeas review, a Petitioner must both "fairly present" his claims to the state courts *and* exhaust his state remedies. *Hicks*, 377 F.3d at 552; 28 U.S.C. § 2254(b), (c). A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims. *Rust*, 17 F.3d at 160. Here, Petitioner never presented his substantive allied offenses claim to the appellate or state supreme courts. As such, Petitioner's fifth habeas claim is procedurally defaulted.

19

Under *Maupin*, once a claim is procedurally defaulted, a federal court may only consider the merits of the claim if the petitioner demonstrates either: (1) there was a cause for him not to follow the procedural rule and he was actually prejudiced by the alleged constitutional error; or (2) a fundamental miscarriage of justice will result from a bar of federal habeas review. 785 F.2d at 138. Petitioner does not provide any explanation as to why he failed to raise this claim during the appeal from his re-sentencing (Docket No. 1, Attachment 2, pp. 10-11 of 17). Furthermore, Petitioner cannot prove a fundamental miscarriage of justice. To demonstrate a fundamental miscarriage of justice, a petitioner must prove he or she is actually innocent of the crime for which she was convicted. *Brinkley*, 2012 U.S. Dist. LEXIS 60621. Petitioner makes no such allegation (Docket No. 1, Attachment 2, pp. 10-11 of 17). In fact, during his initial sentencing, Petitioner fully acknowledged his guilt (Docket No. 8, Attachment 3, pp. 11-13 of 18).

Since Petitioner did not fairly present his habeas claim five to the state courts for review and cannot now save this claim by showing either cause or a fundamental miscarriage of justice, Petitioner's claim five is without merit and the Magistrate recommends it be dismissed.

### 3.    GROUND SEVEN IS NOT PROCEDURALLY DEFAULTED

Petitioner originally presented his claims found in habeas ground seven in his Rule 26(B) Motion to Re-Open, filed on July 15, 2011 (Docket No. 8, Attachment 1, pp. 182-98 of 285). Upon denial of his Motion, Petitioner timely filed a Notice of Appeal concerning these same issues to the Ohio Supreme Court (Docket No. 8, Attachment 1, pp. 235-52 of 285). Therefore, ground seven is properly before this Court for review.

**C.**    **HABEAS CORPUS PETITION**

**1.**    **HABEAS STANDARD OF REVIEW**

An application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. at 413. The term "unreasonable" must be based on an objective interpretation. Therefore, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2792-93 (1979)).

In order to obtain federal habeas corpus relief, a petitioner must establish the state court's decision was "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011) (*quoting Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011)). This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (2011) (*citing Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Harrington*, 131 S.Ct. at 787.

## 2. GROUND SEVEN

In his seventh assignment of error, Petitioner alleges ineffective assistance of appellate counsel, citing failure of his counsel to raise the following issues during appellate review of his re-sentencing:

1. The trial court erroneously accepted Petitioner's plea of guilty without first determining that Petitioner had an understanding of the nature of the charges against him, which precluded Petitioner from making a knowing, voluntary, and intelligent plea, in violation of the Fifth, Sixth, and Fourteenth Amendments.

2. The trial court failed to place the negotiated plea on the record in open court, a violation of the Fourteenth Amendment.

3. Petitioner's plea was not made knowingly and voluntarily because no factual basis for the plea was establsihed, in violation of the Fifth and Fourteenth Amendments.

4. The trial court erred in denying Petitioner's Motion to Withdraw his guilty plea without a full and fair hearing, in violation of the Fourth Amendment.

5. The trial court abused its discretion when sentencing Petitioner to crimes that were to be considered "allied offenses of similar import," a violation of the Fifth and Fourteenth Amendments.

6.    Petitioner's plea was not made knowingly, voluntarily, or intelligently given the inadequate record made by the trial court.

(Docket No. 1, Attachment 2).

     **a.**    **STANDARD**

To establish ineffective assistance of counsel, Petitioner must meet the long-established two-prong standard set forth in *Strickland v. Washington* (466 U.S. 668 (1984)), which requires Petitioner to prove that trial counsel's performance was both "deficient" and "prejudicial to the defense." *Strickland*, 466 U.S. at 687. "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington*, 131 S.Ct. at 787 (*quoting Strickland*, 466 U.S. at 688). To establish prejudice,

> a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'

*Harrington*, 131 S.Ct. at 787-88 (*quoting Strickland*, 466 U.S. at 687, 693-94).

The *Strickland* standard necessarily sets a high bar that is difficult to overcome. As the Supreme Court reasoned in its decision,

> it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

23

that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal citations omitted). The question, then "is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788 (*citing Strickland*, 466 U.S. at 690). The challenger bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

### b.     GROUND ONE: NATURE OF THE CHARGES

Petitioner alleges appellate counsel should have argued that the trial court wrongly accepted his plea of guilty without first insuring Petitioner understood the nature of the charges against him (Docket No. 1, p. 5 of 14; Docket No. 1, Attachment 2, pp. 1-3 of 17). The United States Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

Here, Petitioner and his trial counsel signed a Crim.R. 11(C) plea form which indicated Petitioner's understanding of the charges against him[4] (Docket No. 8, Attachment 1, pp. 218-20 of 285). During Petitioner's initial plea proceeding, the trial court, after laying out the exact charges and possible sentences against Petitioner, specifically asked Petitioner "[d]o you

---

[4] The form specifically states "I further acknowledge that I understand the *nature of the charges* and the maximum penalties involved upon conviction" (Docket No. 8, Attachment 1, p. 220 of 285).

understand the nature of all these charges and all these penalties and fines that can be imposed,"
to which Petitioner answered "yes" (Docket No. 8, Attachment 3, p. 7 of 18). Based on this
evidence, Petitioner's appellate counsel had no ground on which to allege Petitioner's failure to
understand the nature of the charges against him. Petitioner's assignment of error is without
merit.

    **c.**      **GROUND TWO: NEGOTIATED PLEA ON RECORD**

    In his second claim, Petitioner alleges his appellate counsel should have argued the trial
court erred by not placing Petitioner's negotiated plea deal on the record in open court (Docket
No. 1, p. 6 of 14; Docket No. 1, Attachment 2, pp. 4-5 of 17). He does *not* claim that this alleged
failure caused him to enter anything less than a knowing, intelligent, and voluntary guilty plea
(Docket No. 1, Attachment 2, pp. 4-5 of 17).

    Under Crim.R. 11(F), "[w]hen, in felony cases, a negotiated plea of guilty . . . is offered,
the underlying agreement upon which the plea is based shall be stated on the record in open
court." While Petitioner is correct in that neither the trial court nor the prosecutor placed the
specific details of Petitioner's negotiated plea on the record (Docket No. 8, Attachment 3, pp. 1-
18 of 18), Petitioner fails to demonstrate any prejudice stemming from this omission.

    First, Petitioner was advised that he could be sentenced to nearly forty years in prison for
pleading guilty (Docket No. 8, Attachment 3, p. 7 of 18). In reality, Petitioner was only
sentenced to a total of seven years for all four counts against him (Docket No. 8, Attachment 1,
pp. 10-11 of 285). Second, the court asked Petitioner "[h]as anybody made any promises or
threats to induce you to withdraw your previous[] plea of . . . not guilty," to which Petitioner
answered "[o]ther than the agreement of sentence, that's it" (Docket No. 8, Attachment 3, p. 8 of

18). At no time during the sentencing hearing did Petitioner object to the sentence being given

(Docket No. 8, Attachment 3, pp. 1-18 of 18). Therefore, any alleged error is harmless and

Petitioner's assignment of error is without merit.

### d.  GROUND THREE: NO FACTUAL BASIS

In his third assignment of error, Petitioner claims his appellate counsel erred by not

alleging the failure of the trial court to determine if there was a factual basis for his guilty plea

(Docket No. 1, p. 7 of 14; Docket No. 1, Attachment 2, pp. 6-7 of 17). Petitioner seems to be

suggesting he entered a guilty plea under the standards of *North Carolina v. Alford*, (400 U.S.

25) (1970)), under which the Supreme Court requires that "pleas coupled with claims of

innocence should not be accepted unless there is a factual basis for the plea." 400 U.S. 25 at

n.10.

During his re-sentencing, Petitioner stated he felt his attorney "kind of induced [him] into

taking this plea" (Docket No. 8, Attachment 2, p. 5 of 12). Petitioner went on to state "I've

always maintained, from the very beginning, that what happened was not what was being said"

(Docket No. 8, Attachment 2, p. 5 of 12). However, during Petitioner's original sentencing, he

spoke at length as to his responsibility for these crimes.

> THE COURT:    At this point do you have any statement that you want to make to me prior to entering any sentencing?
>
> DEF BENNETT:    Just that I understand what my actions have caused. I know what it did to the victim, did to my family, and my brother's family. You know, it has affected a lot of people. This man was nice to me.
> . . .
>
> If there was any way I could take back my actions, I made many mistakes during the course of one hour that affected

> many people's lives. For that, for that I do regret. If I could take it back, I would; but I can't.
>
> I just pray every day that the victim forgives me and that you have mercy on me for sentencing . . . I know I don't deserve it because of my action, but I do want you to understand that I do understand exactly what my actions caused and that I do regret it.

(Docket No. 8, Attachment 3, pp. 11-13 of 18).

Given Petitioner's admitted guilt to these crimes, appellate counsel was under no obligation to raise this issue on appeal. Petitioner's assignment of error is without merit.

### e.  GROUND FOUR: WITHDRAWAL OF GUILTY PLEA

In his fourth assignment of error, Petitioner alleges his appellate counsel should have appealed the trial court's denial of Petitioner's motion to withdraw his guilty plea given that the trial court did not provide a full and fair hearing (Docket No. 1, p. 8 of 14; Docket No. 1, Attachment 2, pp. 8-9 of 17). The record indicates otherwise. Before re-sentencing Petitioner on June 14, 2010, the trial court conducted a full hearing regarding Petitioner's Motion to Withdraw (Docket No. 8, Attachment 2). In fact, a majority of the hearing on that day was focused on Petitioner's Motion (Docket No. 8, Attachment 2). Petitioner's counsel was not remiss in failing to raise this assignment of error, as there were no grounds for such a claim. Therefore, Petitioner's assignment of error is without merit.

### f.  GROUND FIVE: ALLIED OFFENSES OF SIMILAR IMPORT

Petitioner next argues his appellate counsel was ineffective for failing to cite the trial court's error in not sentencing Petitioner to allied offenses of similar import (Docket No. 1, p. 9 of 14; Docket No. 1, Attachment 2, pp.10-11 of 17). As stated above, Petitioner should, in fact, have been sentenced on allied offenses of similar import. However, Petitioner cannot now

maintain an argument of prejudice for his appellate counsel's failure to raise this argument. Although Petitioner would have only been convicted and sentenced on two of the four charges, rather than on all four, the result is the same. Petitioner was sentenced to four seven-year terms to be served *concurrently*, not consecutively. Therefore, no matter the number of convictions, Petitioner is still serving seven years in prison for his crimes. Petitioner cannot therefore show prejudice as a result of his appellate counsel's omission. His assignment of error is without merit.

### g. GROUND SIX: A KNOWING, VOLUNTARY, AND INTELLIGENT PLEA

Finally, Petitioner argues his appellate counsel was ineffective for failing to allege that the record is "completely devoid of any determinations that Petitioner's plea was knowingly, voluntarily, or intelligently made" (Docket No. 1, p. 10 of 14; Docket No. 1, Attachment 2, pp. 12-13, 17 of 17). This is simply not true.

The Supreme Court has long held that, as an effective waiver of constitutional rights, a guilty plea "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). During Petitioner's original sentencing, the trial court took great care to insure that Petitioner: (1) understood the Crim.R. 11(C) form, which Petitioner signed (Docket No. 8, Attachment 3, p. 5 of 18); (2) felt he was adequately represented by counsel (Docket No. 8, Attachment 3, p. 5 of 18); (3) understood the serious nature of the charges against him as well as the possible penalties (Docket No. 8, Attachment 3, p. 6 of 18); (4) knew he was waiving the right to a felony sentencing hearing (Docket No. 8, Attachment 3, p. 7 of 18); (5) knew he was making a complete admission to the allegations in the indictment

28

(Docket No. 8, Attachment 3, p. 7 of 18); and (6) knew he was waiving his rights to a jury trial, to confront and cross-examine witnesses, to have witnesses subpoenaed, to bring witnesses on his own behalf, to remain silent, to appeal, and to require the State to prove its case beyond a reasonable doubt (Docket No. 8, Attachment 3, pp. 9-10 of 18). At no time during this proceeding did Petitioner indicate, by words or actions, that he did not understand what he was doing or what the consequences of his actions would be (Docket No. 8, Attachment 3).

Therefore, Petitioner's appellate counsel did not err by not raising this claim on appeal. Petitioner's assignment of error is without merit.

## VI. CONCLUSION

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the Motion Brief, and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:        July 22, 2013

29

## VII. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.